UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAPPO OF BUFFALO, LLC and TAPPO PIZZA, LLC, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

ERIE INSURANCE COMPANY,

        Defendant.

---

Civil Action No._____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs TAPPO OF BUFFALO, LLC ("Tappo") and TAPPO PIZZA, LLC ("Tappo Pizza"), individually and on behalf of the members of the below defined class, bring this class action against Defendant ERIE INSURANCE COMPANY, and in support thereof state the following:

## NATURE OF THE ACTION

1. Plaintiff Tappo owns and operates Tappo Restaurant, a full service Italian-American bar and restaurant located at 338 Ellicott Street, Buffalo, New York 14203.

2. Tappo Pizza owns and operates Tappo Pizza an upscale bar and restaurant specializing in wood fired gourmet pizzas located at 166 Chandler Street, Buffalo, New York 14207.

3. The business operations of both Plaintiffs Tappo and Tappo Pizza have been severely impacted by reason of the COVID-19 pandemic (a.k.a. the "Corona Virus" or "SARS-COVID-2") and have through no fault of their own been forced to curtail business and/or

severely limit their business operations by governmental order and to protect and preserve their property from further damage.

4. To insure against such adverse impacts on their respective businesses and/or to prevent further damage to their property, Plaintiffs Tappo and Tappo Pizza each purchased commercial liability and property insurance policies from Defendant Erie that included special coverage as set forth in the "Ultrapack Plus Commercial Property Coverage Part" (PK-00-02 (Ed. 9/18) CL 0002 and "Restaurants Enhancement Endorsement" (PK-JK (Ed. 9/18) CL-0348) (collectively the "Ultrapack Property Coverage").

5. The Ultrapack Property Coverage provides "Income Protection" coverage which provides for payment to an insured due to interruption of business resulting from loss or damage to covered property for an insured peril (the "Income Protection Coverage").

6. The Ultrapack Property Coverage also provides "Extra Expense Coverage" which provides for payments to an insured for any expenses incurred due to a partial or total interruption of the insured's business resulting from loss or damage to covered property for an insured peril (the "Extra Expense Coverage").

7. The Ultrapack Property Coverage also provides "Civil Authority" coverage, which provides for payment to an insured for a loss caused by the action of a civil authority that prevents access to the insured premises (the "Civil Authority Coverage").

8. The policies issued to Plaintiffs, and other Class members by Defendant Erie are commonly known as "all risk policies", meaning that the policies insure against all risk of loss except risks that are specifically excluded.

9. There is no exclusion in the policies of insurance issued by Defendant Erie to Plaintiffs and other Class members for viruses or other communicable diseases.

10. Plaintiffs were each forced to close or reduce their business operations due to the effects of COVID-19 and the orders issued by civil authorities in New York State prohibiting on-site service for customers, as well as to fulfill Plaintiff's contractual obligations to Defendant Erie to prevent further damage to covered property and minimize the suspension of their respective business loss.

11. Upon information and belief, despite the coverages listed above, Defendant Erie has without basis adopted a nationwide policy of denying all claims for covered losses under the Ultrapack Property Coverage resulting from the impacts of COVID-19 and the orders issued by civil authorities prohibiting or limiting business operations of its insureds.

12. As a result, Defendant Erie has denied the claims submitted by Plaintiffs and other Class members under their respective policies.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C.§1332, because Plaintiffs' and Defendant are citizens of different states, and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

14. Venue is proper in this district under 28 U.S.C.§1391 because a substantial part of the events or admission giving rise to Plaintiffs' claims occurred in this District, including, (i) Plaintiffs' purchase of the insurance policies in this District; (ii) Plaintiffs' businesses operate from insured properties located in this District; and (iii) and losses suffered by Plaintiffs from COIVD-19 and the actions taken by civil authorities for which coverage was denied by Defendant Erie took place in this District.

## THE PARTIES

15. Plaintiff Tappo is a New York limited liability company, with its principal place of business located at 338 Ellicott Street, Buffalo, New York 14203.

16. Plaintiff Tappo Pizza is a New York limited liability company with its principal place of business located at 166 Chandler Street, Buffalo, New York 14207.

17. Upon information and belief, Defendant Erie is a foreign corporation licensed and authorized to do business in New York State.

## FACTFUL BACKGROUND

### POLICIES OF INSURANCE ISSUED BY DEFENDANT ERIE

18. In return for premiums paid by each of the Plaintiffs, Defendant Erie issued commercial general liability and property insurance policies to each of Plaintiff Tappo (Policy No. Q9708774544) and Plaintiff Tappo Pizza (Policy No. Q972072308). Each policy included the Ultrapack Property Coverage. A true and correct copy of Tappo's policy ("Q9708774544") is attached here to as **Exhibit A.** A true and correct copy of Tappo Pizza's policy ("Q972072308") is attached hereto as **Exhibit B**.

19. Neither Plaintiff is in default of its obligation to pay the required premium to Defendant Erie.

20. The policy period for Plaintiff Tappo's insurance policy runs from December 12, 2019 through December 12, 2020.

21. The policy period for Plaintiff Tappo Pizza's policy ran from April 10, 2019 to April 10, 2020 and was then renewed for the period of April 10, 2020 through April 10, 2021.

3860295, 1, 067474.0001

22. The covered property under Plaintiff Tappo's policy is 338 Ellicott Street, Buffalo, New York 14203. The covered property under Plaintiff Tappo Pizza's policy is 166 Chandler Street, Buffalo, New York 14207 (collectively the "Covered Property").

23. Pursuant to the policies issued by Defendant Erie to Plaintiffs and other Class members, Defendant Erie is contractually obligated to pay for "direct physical 'loss', except for 'loss' as excluded or limited in this policy."

24. "Loss" is defined as ""direct and accidental loss of or damage to covered property."

25. Defendant Erie failed to exclude or limit coverage for losses resulting from viruses or other communicable diseases in Plaintiffs' insurance policies and the insurance policies issued to other Class members.

26. This is despite the fact that since at least 2006, the insurance industry as a whole has been aware of the risk of damage to property, physical loss of property, and damage to business operations associated with viruses and bacteria.

27. In or about 2006, the insurance industry adopted a standard form policy endorsement for commercial property policies commonly known as "Exclusion of Loss Due to Virus or Bacteria." This has otherwise been referred to as multi-state form filing CF-2006-OVBEF and/or endorsement CP 01 75 07 06 (New York) or CP 01 40 07 06 (collectively, the "Virus Exclusion").

28. The intent of the Virus Exclusion is to exclude from all risk policies, like the policies issued to Plaintiffs and other Class members, coverage for damages or loss of income arising from the peril of viruses or other communicable diseases.

29. The insurance industry has likewise expressly recognized since at least 2006 that a virus or other communicable disease can constitute physical damage to property. At the time the Virus exclusion was being developed, the insurance industry drafting arm, ISO, circulated a memo to state insurance regulators that provide, in part, that:

> "Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior buildings surfaces or the surfaces of personal property. When disease causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case."

30. The Virus Exclusion is not in the insurance policies issued to Plaintiffs and other Class members by Defendant Erie, nor do said policies contain an exclusion that is substantially similar to the Virus exclusion.

31. Losses due to COVID-19 and the resulting actions taking by civil authorities are a covered loss under the subject policies issued by Defendant Erie.

**A. Income Protection Coverage**

32. Pursuant to the Income Protection Coverage, Defendant Erie is obligated to pay for any loss of income sustained by an insured due to "partial or total 'interruption of business' resulting from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against."

33. "Interruption of business" is defined as "the period of time that your business is partially or totally suspended and it: 2. Begins with the date of direct 'loss' to covered property

caused by a peril insured against; and 3. Ends on the date when the covered property should be repaired, or replaced with reasonable speed and similar quality."

### B. Extra Expense Coverage

34. The Extra Expense Coverage obligates Defendant Erie to pay for necessary expenses incurred by an insured "due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' …."

35. Such extra expenses are to be paid to: (i) avoid or minimize the interruption of business and to continue an insured's business operations; or (ii) minimize the interruption of business if the insured cannot continue its business operations to the extent it reduces the amount of loss that would have been payable under loss of income.  I

### C. Civil Authority Coverage

36. The Civil Authority Coverage obligates Defendant Erie to pay for the actual loss of income and necessary extra expenses sustained by an insured that is:

> caused by action of a civil authority that prohibits access to the premises described in the 'Declarations' … anywhere in the coverage territory provided … Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the 'Declarations … provided that both of the following apply:
>
> a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the 'Declarations' … are not more than one mile from the damaged property; and
>
> b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damaged or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

## ACTION BY CIVIL AUTHORITY

37.     As a result of the COVID-19 pandemic, civil authorities throughout the United States, including New York State, have issued orders requiring the full or partial suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' businesses (collectively the "Suspension Orders").

38.     In New York State, the Suspension Orders include, but are not limited to, the following Executive Orders issued by Governor Andrew Cuomo:

a. Executive Order 202, issued on March 7, 2020, declaring a "disaster emergency" for all of New York State because of COVID-19;

b. Executive Order 202.1, issued on March 12, 2020, requiring that any large gathering or event where attendance was anticipated to be in excess of five hundred people to be cancelled or postponed for a minimum of thirty days, and requiring any business where attendance would be fewer than five hundred people, to operate at no greater than fifty percent occupancy and no greater than fifty percent of seating capacity.

c. Executive Order 202.3, issued on March 16, 2020, that any large gathering or event where more than fifty people were expected to attend to be cancelled or postponed indefinitely, and requiring that any restaurant or bar in the state of New York cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and limiting the service of food or beverage to off-premises consumption only.

    d.   Executive Order 202.6, issued on March 18, 2020, reducing on site workers for all non-essential businesses to fifty percent (50%) effective as of 8 p.m. on March 20, 2020;

    e.   Executive Order 202.7, issued on March 19, 2020, reducing on site workers for all non-essential businesses to seventy-five percent (75%) effective as of 8 p.m. on March 21, 2020;

    f.   Executive Order 202.8, issued on March 20, 2020, reducing on site workers for all non-essential businesses to one hundred percent (100%) effective as of 8 p.m. on March 21, 2020.

    g.   These various Executive Orders and/or parts thereof have been continued and/or extended by subsequent Executive Order.  As a result Suspension Orders preventing Plaintiffs from operating their businesses continue to be in effect.

39.    Outside of New York State, and where members of the class reside, similar Suspension Orders have been issued pursuant to executive order by the various governors of those respective states and/or have been imposed by statutes, rules, regulations, orders, and/or directives of various state and local civil authorities.

### HARM CAUSED BY COVID-19 AND THE SUSPENSION ORDERS

40.    The presence of COVID-19 caused direct physical loss or damage of the covered property under the Plaintiffs' policies, and the policies of other Class members, by denying use of and damaging the covered property, and by causing a necessary full or partial suspension of operations during a period of restoration.

3860295, 1, 067474.0001

41. The Suspension Orders prohibited access to the covered property of Plaintiffs and other Class members, and the area immediately surrounding covered property, in response to dangerous physical conditions resulting from a covered loss.

42. As a result of the presence of COVID-19 and the Suspension Orders, Plaintiffs and the other Class members lost income and incurred extra expenses.

43. Plaintiffs' employees, customers, and/or vendors: (a) were exposed to COVID-19, (b) tested positive for the virus and/or tested positive for COVID-19, (c) were otherwise diagnosed as infected with COVID-19, (d) exhibited symptoms consistent with infection by COVID-19, and/or (e) were instructed by civil authorities and/or their medical providers to self-isolate quarantine and/or to suspend normal business operations.

44. Plaintiffs'' premises were exposed to COVID-19, had COVID-19 or persons with COVID-19 present at the respective locations, and/or could no longer be used or operated due to orders of civil authorities issued in response to COVID-19.

45. Properties in the immediately surrounding area of Plaintiffs' premises were exposed to COVID-19, had COVID-19 on surfaces therein, and/or could no longer be used or operated due to orders of civil authorities issued in response to COVID-19.

46. The presence of COVID-19 and/or persons infected with COVID-19 caused direct physical loss or damage to the property covered under the Income Protection, Extra Expense and Civil Authority Coverages in Defendant Erie's policies, as well as to property in the immediate area of such covered property.

47. The presence of COVID-19 and/or people infected with COVID-19 caused civil authorities throughout New York State to issue orders requiring the suspension of business

and/or use of commercial property, including the premises owned by Plaintiffs and other Class members as well as property in the immediate area such covered property.

48.     Plaintiffs'' submitted claims for loss to Defendant Erie under their policies due to the presence of COVID-19 and the Suspension Orders, and Defendant Erie has denied those claims.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

50.     Plaintiffs' seek to represent a class defined as:

All persons and entities that:

(a) purchased insurance from Defendant Erie with Ultrapack Property Coverage, which included one or more of the following: Income Protection Coverage, Extra Expense Coverage, and/or Civil Authority Coverage;

(b) who suffered a suspension and/or reduction of business at the covered property related to COVID-19 and/or the action of a civil authority in response to COVID-19;

(c) whose policies were in effect for any period of time on or after February 15, 2020 through either the end of (i) the declared emergency period or (ii) such time as prohibitions, limitations or restrictions on use of the covered property imposed by the Suspension Orders are lifted; and

(d) who suffered loss of income or incurred extra expenses by reason of COVID 19 and/or the actions of a civil authority in response to COVID 19 (the "Class").

51.     The aforesaid Class does not include Defendant Erie, its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; the court staff assigned to this case and their immediate family members.

52. **FRCP 23(a)(1) – Numerosity** - The Class members are so numerous that joinder of all members is impracticable. Upon information and belief, Defendant Erie has issued thousands of commercial property insurance policies with Ultrapack Property Coverage or similar property insurance containing Income Protection Coverage, Extra Expense Coverage, and/or Civil Authority Coverages.

53. **FRCP 23(a)(2) – Commonality and Predominance** - This action involves common questions of law and fact that predominate over any questions affecting any individual Class members, including without limitation:

   a. Defendant Erie issued all risk policies to each Class member in exchange for payment of premiums by the class members;

   b. Whether the class suffered a covered loss based on the covered policies issued to other Class members;

   c. Whether Defendant Erie wrongfully denied all claims based on COVID-19;

   d. Whether Defendant Erie's Income Protection Coverage applies to a suspension of business caused by COVID-19;

   e. Whether Defendant Erie's Civil Authority Coverage applies to a loss of income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

   f. Whether Defendant Erie's Extra Expense Coverage applies to efforts to minimize a loss caused by COVID-19;

   g. Whether Defendant Erie has breached its contracts of insurance with a blanket denial of all claims based on business interruption, income loss or closures related

12

    to COVID-19 and the related orders issued by civil authorities in response to COVID-19; and

  h. Whether Plaintiffs in the Class are entitled to an award of reasonable attorney's fees and interest and costs.

54. **FRCP 23(a)(3) – Typicality** - Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and the other Class members are all similarly affected by Defendant Erie's refusal to pay under its Income Protection, Extra Expense, and/or Civil Authority Coverages. Plaintiffs' claims and those of the other Class members are based upon the same legal theories. The damages sustained by Plaintiffs and other Class members are a direct approximate result of the same wrongful practices engaged in by Defendant Erie.

55. **FRCP 23(a)(4) – Adequacy of Representation** - Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other Class members who they seek to represent. Plaintiffs have retained counsel competent and experienced and complex class action litigation. The interests of the above defined Class will be fairly and adequately protected by Plaintiffs and their counsel.

56. In the alternative, the Class may be certified under Federal Rule of Civil Procedure 23(b)(l) and/or 23(b)(2) because: (a) the prosecution of separate actions by the individual Class members would create a risk of varying results and incompatible/inconsistent standards of conduct for Defendants: (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have

13

acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

57. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

## CLAIMS FOR RELIEF

## CLAIM 1: BREACH OF CONTRACT

58. Plaintiffs' repeat and reallege paragraphs 1 through 57, with the same force and effect as fully set forth herein.

59. Plaintiffs bring this claim on behalf of themselves individually and on behalf of the other Class members.

60. Plaintiffs and other Class members suffered physical loss of property due to COVID-19 and the acts of civil authorities in response to COVID 19, which were covered losses under the policies of insurance issued to them by defendant Erie.

61. As a result of said covered losses, Plaintiffs and the other Class members have sustained a partial or total interruption of business resulting in a loss of income that would be recoverable under the terms and conditions of the Income Protection Coverage.

62. As a result of said covered losses and the partial or total interruption of business resulting therefrom, Plaintiffs and the other Class members have incurred extra expenses that would be reimbursable under the terms and conditions of the Extra Expense Coverage.

63. Actions taken by civil authorities in issuing the Suspension Orders in response to COVID-19 triggered coverage under the terms and conditions of the Civil Authority Coverage because:

    a. Such actions by civil authorities occurred in response to damage to property other than covered property at each Plaintiff's and Class member's insured premises, resulting in denial of access to said premises;

    b. The prohibition of access to the area immediately surrounding such damaged property was prohibited by civil authorities as a result of that damage, and the insured premises for each Plaintiff and Class member were within that area and not more than one mile from the damaged property; and

    c. The actions by civil authorities were taken in response to dangerous physical conditions resulting from the damage or continuation of an insured peril (COVID-19) that caused that damage and/or was taken to enable civil authorities to have unimpeded access to the damaged property.

64. Under the terms and conditions of the Civil Authority Coverage, Defendant Erie is therefore responsible to pay Plaintiffs and each Class member for the loss of income they sustained and extra expenses they incurred by reason of the aforesaid actions of the civil authorities.

65. To date, Defendant Erie has failed and refused to honor its contractual obligations to Plaintiffs under the terms and the other Class members by denying claims covered by the Income protection, Extra Expense, and Civil Authority Coverages that resulted from COVID-19 and/or the action of civil authorities in suspending or reducing Plaintiffs' and each Class member's business operations.

66. Instead of honoring its contractual obligations with Plaintiffs and the other Class members, upon information and belief, Defendant Erie has instead adopted a nationwide policy of denying all claims submitted under the Income Protection, Extra Expense, and/or Civil

Authority Coverages if such claims relate in any way to a loss arising from COVID-19 and/or the acts of civil authorities in response to COVID-19.

67. The actions of Defendant Erie are a breach of the policies of insurance issued by it to Plaintiffs and the other Class members.

68. Defendant Erie has unreasonably obstructed and prevented Plaintiffs and other Class members from receiving prompt payment for the insurance benefits they are entitled to under their polices.

69. Defendant Erie had a contractual obligation under the policies it issued to provide coverage for the covered losses sustained by Plaintiff and the other Class members by reason of COVID-19 and/or the Suspension Orders.

70. Plaintiffs duly notified Defendant Erie of their claims pursuant to the terms and conditions of their respective policies.

71. Defendant Erie breached its duty and obligations of good faith and fair dealing in denying the claims submitted by Plaintiffs and other Class members.

72. Plaintiffs and other Class members have been damaged by Defendant Erie's wrongful conduct, including without limitations suffering extra-contractual consequential damages as a result of Defendant Erie's failure to act promptly and in good faith.

73. Plaintiff and other Class members have been damaged by Defendant Erie's wrongful conduct including that they have sustained foreseeable extra contractual consequential damages including business interruption losses, attorney's fees, and litigation related expenses.

74. By reason of the foregoing, Plaintiffs and the other members of the Class have sustained damages in an amount to be determined at trial but believed to be in excess of $7,500,000.

16

## CLAIMS FOR RELIEF

## CLAIM 2: DECLARATORY JUDGMENT

75. Plaintiffs repeat and reallege paragraphs 1 through 74 with the same force and effect as if fully set forth herein.

76. Plaintiffs bring this claim on behalf of themselves individually and on behalf of the other Class members.

77. Plaintiffs and other Class members have fully complied with all terms and conditions of the policies of insurance issued to them by Defendant Erie.

78. Plaintiffs and other Class members have paid their premiums in exchange for the promise of Defendant Erie to pay covered claims under the terms and conditions of its policies.

79. Despite the absence of any exclusion from coverage for losses arising from a virus or communicable disease in the policies of insurance issued by Defendant Erie to Plaintiffs and other Class members and Defendant Erie's contractual obligation to pay for all losses to covered property caused by risks not expressly excluded from excluded from coverage, Defendant Erie, in bad faith and without basis, has denied claims for covered losses resulting from COVID-19 and/or the acts of civil authorities in response to COVID-19 on a class wide basis.

80. The aforesaid conduct of Defendant Erie allows this Court to render declaratory relief regardless of whether members of the Class have actually filed a claim.

81. This case is ripe as an actual case or controversy exists as to whether their exists an obligation on the part of Defendant Erie to reimburse Plaintiffs and the other Class members for the full amount of lost income and extra expenses they incurred in connection with the

covered losses they sustained by reason of the COVID-19 pandemic and/or the full or partial interruption of their businesses by reason of the Suspension Orders and acts of civil authorities.

82. Pursuant to 28 U.S.C. § 2201, Plaintiffs and other Class members, seek a declaratory judgment declaring:

    a. The lost income and extra expenses incurred by Plaintiffs and the other Class members by reason of COVID-19 and/or the resulting full or partial suspension of the business operations either by reason of COVID-19 or the actions taken by civil authorities in response to COVID-19 are covered losses under the terms and conditions of the policies issued by Defendant Erie; and

    b. Defendant Erie is under an obligation to pay for all loss in income and extra expenses incurred or to be incurred by Plaintiffs and other Class members in connection with covered losses falling within the terms and conditions of the Ultrapack Property Coverage, inclusive of the Income Protection, Extra Expense and Civil Authority Coverages, which relate to and/or arise from the COIVD-19 and/or the Suspension Orders or other acts of civil authorities.

WHREFORE, Plaintiffs, individually and behalf of the other Class members, respectfully requests judgment:

    A. Entering an order certifying the Class, designating Plaintiffs the Class representatives, and appointing Plaintiffs' counsel as counsel for the Class;

    B. On Claim 1 of the Complaint, awarding Plaintiffs and the other members of the Class judgment against Defendant Erie in an amount to be determined at trial, but no less than $7,500,000;

    C. On Count 2 of the Complaint, declaring that:

    i. The lost income and extra expenses incurred by Plaintiffs and the other Class members by reason of COVID-19 and/or the resulting full or partial suspension of the business operations either by reason of COVID-19 or the actions taken by civil authorities in response to COVID-19 are covered losses under the terms and conditions of the policies issued by Defendant Erie; and

    ii. Defendant Erie is under an obligation to pay for all loss in income and extra expenses incurred or to be incurred by Plaintiffs and other Class members in connection with covered losses falling within the terms and conditions of the Ultrapack Property Coverage, inclusive of the Income Protection, Extra Expense and Civil Authority Coverages, which relate to and/or arise from the COIVD-19 and/or the Suspension Orders or other acts of civil authorities.

D. Awarding Plaintiffs and other members of the Class attorneys' fees and costs;

E. Awarding pre and post judgment interest on any judgment amount awarded to Plaintiffs and other members of the Class;

F. Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of all other Class members, hereby demands a trial by jury on all issues of fact and damages so triable.

Dated: June 18, 2020
      Buffalo, New York

                              LIPSITZ GREEN SCIME CAMBRIA, LLP

                                /s/Jeffrey F. Reina
                              Jeffrey F. Reina, Esq.
                              James T. Scime, Esq.
                              Todd J. Aldinger, Esq.
                              *Attorneys for Plaintiffs*

                                        42 Delaware Avenue, Suite 120
                                        Buffalo, New York 14202
                                        (716) 849-1333
                                        jreina@lglaw.com

3860295, 1, 067474.0001